`

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| RHONDA J. TURPIN, | ) | CASE NO. 1:07 CV 1548 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| UNITED STATES ATTORNEY | ) | AND ORDER |
| N.D. OHIO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

On May 25, 2007, *pro se* plaintiff Rhonda J. Turpin filed this action against the United States Attorney for the Northern District of Ohio, the United States Secret Service, United States District Judge John R. Adams, the "U.S. Fed. Clerk of Courts, Akron," Attorney Thomas Teodosio, the City of Shaker Heights, National City Bank, and the Cleveland Plain Dealer. (Compl. at 1.)  In the complaint, plaintiff asserts various causes of action challenging her multiple convictions in state and federal court.  She seeks monetary damages.

**Background**

The allegations in Ms. Turpin's pleading center on her criminal convictions in state and federal court.  Cuyahoga County Court of Common Pleas Records indicate that Ms. Turpin had been convicted on charges of theft, receiving stolen property, uttering, forgery, and theft from 1978

to 2002.[1]  It appears that she had been released from prison prior to the summer of 2002 and was living with Kathy Davie, who Ms. Turpin identifies as "a close friend from prison."  (Compl. at 3.) She contends that beginning in the summer of 2002, Judith Elersic, and Candace Keene initiated a scheme to steal the identities of numerous individuals, including military officers.  Ms. Turpin claims they recruited Kathy Davie to participate in this criminal enterprise.  She alleges that by October 2002, the United States Postal Inspector began an investigation into the criminal activities of Ms. Elersic.  During an interview by law enforcement officials, Ms. Elersic allegedly identified Ms. Turpin as the "mastermind" of the illegal activities.  Ms. Turpin was indicted in the Cuyahoga County Court of Common Pleas on charges of forgery, uttering and receiving stolen property.  She was convicted on February 5, 2003 and sentenced to 10 months incarceration on each count.  The sentences ran concurrent to each other.  She indicates that at the time of her sentencing, she learned that she was also the subject of a federal investigation for similar crimes.

Ms. Turpin states that in March 2003, Ms. Elersic reported to federal authorities that a computer in Ms. Turpin's home was used to make fraudulent drivers' licenses for use in the identity theft activities.  That same month, search warrants were executed for both the home which Ms. Turpin had occupied and the home of Ms. Turpin's daughter, Cleo Turpin.  Several computers were confiscated, including one belonging to Cleo Turpin.  She alleges that no incriminating material was found on any of the computers.

In December 2003, Ms. Turpin was indicted in the United States District Court for

---

[1]    Cuyahoga County Court of Common Pleas records indicate that Ms. Turpin has been convicted in 12 separate cases in their court from 1978 to the 2002 on multiple charges of receiving stolen property, forgery, uttering, grand theft, and drug abuse.  She was also convicted of voluntary manslaughter, felonious assault and possession of criminal tools.  *See*, www.cpdocket.cp.cuyahogacounty.us

the Northern District of Ohio on two counts of theft of government funds, which Ms. Turpin contends was related to misuse of section eight housing funds.  She pled guilty to the charges and was sentenced to 27 months in prison.  *See United States v. Turpin*, Case No. 1:03cr478 (N.D. Ohio indictment filed December 10, 2003)(J. Wells).

Ms. Turpin claims that during her incarceration on these charges, Ms. Elersic, Ms. Davie and Ms. Head continued to use Ms. Turpin's personal bank accounts to deposit checks obtained as part of various identity theft crimes and income tax fraud.  Ms. Turpin also states that she was employed by a non-profit organization prior to her incarceration.  She indicates that Ms. Davie and Ms. Head also deposited illegally obtained funds in the bank account of that agency.  She contends she was unaware of their activities.  Ms. Turpin alleges that when federal authorities uncovered the schemes in the summer of 2003, Ms. Elersic and Ms. Davie implicated Ms. Turpin as the culprit and agreed to testify against her in exchange for leniency.  Ms. Turpin states that Ms. Davie later attempted to recant her testimony but was threatened with further prosecution.  A federal grand jury convened in June 2004 to hear evidence pertaining to a United States Treasury check scam.  Ms. Turpin claims she discovered the illegal activity in her National City Bank account in November 2004 and attempted to report it to National City Bank and the Shaker Heights police.  She claims National City Bank forwarded copies of her correspondence to federal authorities.  She further contends that the Shaker Heights police did not do a proper investigation into her allegations.

Ms. Turpin, Ms. Davie and Ms. Elersic were arrested in August and September 2004. Ms. Turpin alleges that she was denied bond while the others were granted release pending trial. She indicates that the federal authorities entered into a plea agreement with Ms. Elersic and Ms.

Davie in exchange for their testimony against her. Ms. Trupin was convicted on charges of conspiracy, making uttering and possessing counterfeit securities, access device fraud, bank fraud, identity theft, possession of identification document making implements, conspiracy to submit false claims, and false claims. *See United States v. Turpin*, Case No. 1:05cr303 (indictment filed June 22, 2005)(J. Adams). She was sentenced on May 9, 2007 to 188 months in prison followed by a five year term of supervised release.[2] An appeal of her conviction has been filed in the United States Sixth Circuit Court of Appeals and is currently pending.

Sixteen days after her sentencing, Ms. Turpin filed the within twenty-five count complaint seeking punitive damages for the actions of the defendants in connection with the various investigations and resulting convictions. These twenty-five counts assert causes of action for negligent investigation, slander, tampering with evidence and/or obstruction of justice, misuse of position, and violations of the Fourth Amendment.

Counts two, three, four, nine, ten, twelve, thirteen, fifteen, sixteen, eighteen, twenty, and twenty-five assert causes of action for negligence in connection with criminal investigations. Specifically, in Count two, Ms. Turpin alleges that in January 2003, law enforcement officials aided and abetted Ms. Elersic by failing to conduct a proper investigation into her illegal activities. Counts three and four assert that in March 2003, law enforcement agents Kern and Brenamn followed a false lead given by Ms. Elersic to search the computers of Rhonda Turpin and Cleo Turpin. Count nine asserts that federal agents failed to properly investigate Ms. Elersic's role in

---

[2]  Jerold Levert, Johnetta Turpin, Candice Keene, Danny Waddell, Charles Griffin, Richard Taylor, and Jimmie Dunbar were indicted along with Rhonda Turpin, Judith Elersic and Kathy Davie. Ms. Davie was sentenced to 60 months in prison and 3 years supervised release. Ms. Elersic was sentenced to 41 months in prison and 3 years supervised release.

-4-

the United States Treasury check scam in the summer of 2003 when they should have known "she was a professional liar."  (Compl. at 18.)  Count ten contends that federal investigators failed to properly look into tax fraud charges against Ms. Turpin in August 2003.  In Count twelve, Ms. Turpin asserts that the federal agents were negligent in their presentation of evidence to the federal grand jury in June 2004.  Count thirteen contends that Ms. Trupin was wrongfully targeted by federal investigators in August 2004.  Counts fifteen, sixteen, and eighteen assert that National City Bank and the Shaker Heights police chief were negligent in their investigation of Ms. Turpin's bank fraud allegations in December 2004.  Count twenty asserts that federal investigators and Judge Adams were negligent in failing to believe the testimony of Johnetta Turpin in March 2005 concerning Ms. Elersic's involvement in the Treasury check scam.  Count twenty-five asserts that Judge Adams was negligent in failing to investigate the conduct of the federal law enforcement officials at the request of Ms. Turpin in September 2005.

Counts one, six, and seven contains claims of slander.  In Counts one and seven, Ms. Turpin contends that federal investigators and her attorney spoke to a Plain Dealer newspaper reporter regarding her convictions.  This led to an article about her appearing in the newspaper.  She believes this is slander.  She claims in Count six that federal investigators contacted news media who were then present at her "petty fifth degree sentencing in state court."  (Compl. at 17.)  Ms. Turpin claims this is also slander.

In Counts eight, fourteen, nineteen, twenty-one, twenty-two, twenty-three, and twenty-four, Ms. Turpin asserts that the defendants tampered with evidence and obstructed justice.  Count eight alleges that from April 2003 until December 2003, a federal investigator "concealed all investigated and verified records that were a part of the court records and evidence only

-5-

available through him in order to convince courts negatively to help prove Elersic's statements...
." (Compl. at 18.)  In Counts fourteen and nineteen, Ms. Turpin asserts that federal investigators offered a plea bargain to Ms. Elersic and Ms. Davie in November 2004 and December 2004 in exchange for their testimony against Ms. Turpin.  Counts twenty-one through twenty-four all assert that federal investigators failed to present evidence favorable to Ms. Turpin to the grand and petit juries, and offered plea bargain deals to Ms. Elersic and Ms. Davie to provide similar testimony. Ms. Turpin asserts that these plea deals amount to tampering with evidence and obstruction of justice.  In Count twenty-five Ms. Turpin contends that Judge Adams ignored her request to look into the actions of federal investigators.  She contends that this is also obstruction of justice.

Count seventeen contains a claim for misuse of position.  Ms. Turpin contends that Judge Adams denied her release on bond while granting release to Ms. Elersic and Ms. Davie.  She disagrees with this decision and claims he abused his position of authority.

Ms. Turpin also includes claims for violation of the Fourteenth Amendment in Counts five and eleven.  Count five contains allegations pertaining to the seizure of Cleo Turpin's computer from Cleo's home on March 20, 2003.  Count eleven contains a claim pertaining to a traffic stop of Rhonda Turpin in April 2004 by Shaker Heights police searching for Ms. Davie.  Ms. Turpin claims these searches and seizures were not supported by probable cause.

## Analysis

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim

upon which relief can be granted, or if it lacks an arguable basis in law or fact.[3] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  For the reasons stated below, this action is dismissed pursuant to §1915(e).

## *Immunity*

Ms. Turpin has failed to state a claim upon which relief may be granted against any of the named defendants.  As an initial matter, the Secret Service is an agency of the United States. The United States, as a sovereign, cannot be sued without its prior consent, and the terms of its consent define the court's subject matter jurisdiction. *McGinness v. U.S.*, 90 F.3d 143, 145 (6th Cir. 1996).  A waiver of sovereign immunity must be strictly construed, unequivocally expressed, and cannot be implied.  *U.S. v. King*, 395 U.S. 1,4 (1969); *Soriano v. U.S.*, 352 U.S. 270, 276 (1957). Even liberally construing the pleading, there is not a sufficient indication that the United States waived its sovereign immunity for the claims asserted against the Secret Service.  *See Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 581 (2d Cir. 2000)(finding that agencies, instrumentalities, and officers of the federal government cannot be sued under antitrust laws); *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir.1991)(stating that a *Bivens* claim cannot be asserted against the United States government, its agencies or its employees in their official capacities).

Similarly, United States District Judge John R. Adams is absolutely immune from

---

[3]    An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

civil liability.   Judicial officers are generally absolutely immune from civil suits for money damages.  *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).   They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants.  *Barnes*, 105 F.3d at 1115.  For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides.  *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116.  *Stump*, 435 U.S. at 356-57.  A judge will be not deprived of immunity even if the action he or she took was performed in error, done maliciously, or was  in excess of his or her authority.  Ms. Turpin alleges that Judge Adams did not grant her request for release on bond and did not find the testimony of Johnetta Turpin to be credible over the testimony of Ms. Elersic and Ms. Davies.  Both of these actions were taken by Judge Adams in his capacity as a judicial officer and were clearly within the subject matter of the federal court over which he presides.  Consequently, he is entitled to absolute immunity from suits for monetary damages.

United States Attorneys are also entitled to absolute immunity.  Prosecutors are absolutely immune  from damages for initiating a prosecution and in presenting the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993).  A prosecutor must exercise his or her best professional judgment both in deciding which suits to bring and in conducting them in court.  *Skinner v. Govorchin*, No. 05-2458, 2006 WL 2661092, at *6-7, slip op.(6th Cir. Sept. 18, 2006).  This duty could not be properly performed if the prosecutor is constrained in making every decision by the potential consequences of personal

-8-

liability in a suit for damages.  *Id.*  These suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into a claim of improper and malicious actions by the State's advocate.  *Imbler*, 424 U.S. at 424-25; *Skinner*, No. 05-2458, 2006 WL 2661092, at *6-7.  Absolute immunity is therefore extended to prosecuting attorneys when the actions in question are those of an advocate.  *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir.2003).  Immunity is granted not only for actions directly related to initiating a prosecution and presenting the State's case, but also to activities undertaken "in connection with [the] duties in functioning as a prosecutor." *Id.* at 431; *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir.2002).  Ms. Turpin has not clearly stated the nature of her claims against the United States Attorney for the Northern District of Ohio; however, it appears from the other claims in the complaint that she objects to her prosecution and conviction in federal court.  The complaint contains no facts which indicate that the United States Attorney participated in any other kind of activity. This defendant is entitled to absolute immunity.

### *Failure to State a Claim Against Clerk of Court*

While the Clerk of Court has absolute quasi-judicial immunity from damages for civil rights violations when she performs tasks that are an integral part of the judicial process, *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988), the Court does not need to reach this question because Ms. Turpin has not included any allegations against this defendant in the pleading.  A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995).  The complaint simply contains no facts which reasonably

associate the Clerk of Court to any of the claims set forth by plaintiff.

### Respondeat Superior

As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." *Id.* at 690; *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999).  The complaint contains no suggestion of a custom or policy of the City of Shaker Heights which may have resulted in the deprivation of a federally protected right of the plaintiff.

### Private Party Defendants

The remaining defendants, Thomas Teodosia, National City Bank and the Cleveland Plain Dealer, are all private parties, not government entities or officials.  Ms. Turpin has not stated a basis for federal jurisdiction against these defendants.  To the extent that the plaintiff was attempting to assert claims against them under a civil rights statute, she has failed to state a claim upon which relief may be granted.  The only plausible statute under which a claim could be brought would be 42 U.S.C. § 1983.  To establish a prima facie case under 42 U.S.C. § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535

(1981).  Generally to be considered to have acted "under color of state law," the person must be a state or local government official or employee.  A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  An individual may also be considered a state actor if he or she  exercises powers traditionally reserved to a state.  *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974).  A privately retained or appointed attorney is not considered a state actor under 42 U.S.C. § 1983. *Washington v. Brewer*, No. 91-1935, 1991 WL 243591 (6th Cir. Nov. 21, 1991); *see also, Polk County v. Dodson*, 454 U.S. 312, 321 (1981).  Furthermore, there are no allegations in the complaint reasonably suggesting that National City Bank or the Cleveland Plain Dealer could be considered "state actors." for purposes of § 1983.

Ms. Turpin's claims against these private party defendants are stated as causes of action for slander and negligence.  Slander and negligence arise under state tort law.  They do not provide a basis for federal jurisdiction.  Pendent jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).  The court, however, may exercise discretion in hearing state law matters.  *Id.* at 726. In cases where the federal claims are dismissed before trial, the state law claims should also be dismissed.  *Id.*  Having dismissed the claims which could arguably provide a basis for this Court's federal jurisdiction, this Court declines to hear plaintiff's state law claims against Thomas Teodosia, National City Bank, and the Cleveland Plain Dealer.

-11-

### *Heck v. Humphrey*

Moreover, even if Ms. Turpin had stated a viable federal cause of action against the defendants named in the complaint, she could not proceed with this civil action which clearly is intended as a collateral attack on her convictions.  A prisoner may not raise claims in a civil rights action if a judgment on the merits of those claims would affect the validity of his or her conviction or sentence, unless the conviction or sentence has been set aside.  *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).  The holding in *Heck* applies whether plaintiff seeks injunctive, declaratory or monetary relief.  *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401 at *1 (6th Cir. May 5, 1998).  Ms. Turpin raises claims which, if found to have merit, would call into question the validity of her convictions.  As such, she must also allege her convictions were declared invalid by either an Ohio state court or a federal habeas corpus decision.  She has not done so and her claims therefore must be dismissed

### *Statute of Limitations*

Finally, the claims asserted in Counts two through twenty-one are barred by the applicable statute of limitations.  Ohio's two year statute of limitations for bodily injury applies to §1983 claims, *Bivens*[4] actions, and negligence claims under Ohio law.  *LRL Properties v. Portage Metro Housing Authority*, 55 F. 3d 1097 (6th Cir. 1995).  Claims for slander must be brought within one year after the cause of action accrued.  OHIO REV. CODE § 2305.11(A).  A cause of action for slander accrues upon the date of publication of the defamatory matter. *Lewis v. Delaware County JVSD,* 161 Ohio App.3d 71 (2005).  The allegations which form the basis of the claims asserted in Counts two through twenty-one of the complaint took place between January 2003 and March 2005.

---

[4]    *Bivens v. Six Unknown Agents*, 403 U.S. 383 (1971).

This action was filed on May 25, 2007, well beyond the one and two year statutes of limitation for the claims asserted in these counts of the complaint.  There would be no purpose in allowing those matters to go forward in view of the fact that they are clearly time-barred.  *See Fraley v. Ohio Gallia County*, No. 97-3564, 1998 WL 789385, at *1 (6th Cir., Oct. 30, 1998)(affirming *sua sponte* dismissal of *pro se* §1983 action filed after two year statute of limitations for bringing such an action had expired).

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e).  The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[5]

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
UNITED STATES DISTRICT JUDGE

Dated: 8/17/07

---

[5]  28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

-13-